and Eagle Force Associates, Inc. We're here for three purposes today. One is the appeal of the district courts granting a summary judgment in favor of the appellees. Two, appealing the denial of summary judgment in favor of the appellants.    in favor of the appellees. And four, that the district courts grant a summary judgment in favor of the appellants. And five, that the district court properly found when interest should begin to run at the trial. Now, on the standard of review, of course, the court knows that it is a de novo review standard for the summary judgment decisions, and it is abuse of discretion for the factual determinations made by the district court. And, of course, the court is also well-versed with summary judgment rule 56, but that requires no genuine dispute as to any material fact, and any declaration must be based upon personal knowledge of facts that could be admissible at trial. Of course, that's one of the issues here, is that there is an extremely lengthy declaration used to support the summary judgment motion, where there was facts by the lawyer saying what the oral agreement was, that would not otherwise be admissible. Now, there is multiple counts, three of which were at the summary judgment, counts one, two, and three. One is on the written promissory note, I should say count two was breach of the written alleged contract, and counts one and three are various versions of a breach of contractual promise to pay subsequently modified notes. I'm sorry to interrupt you so early, but there are a lot of issues, and I'm just trying to get a couple things clarified at the outset. One, just hypothetically, assume we agree that there are some issues of material fact that need to be addressed. I understand that there's no demand for a jury trial, and I guess my practical question is whether the record that exists now is effectively that record on which a non-jury trial would take place, or would it be contemplated that there'd be a trial when you go through a trial like any non-jury trial and put up witnesses and there might be more than what's in the record? Well, there could be more, there could be less, Your Honor. It's substantially different to ask somebody to prove a case through admissible evidence versus I could tell you what the agreement was or what I think the agreement was. A lawyer on the other side could tell you what the agreement may be. So your position is you'd go back and have a trial and make all the decisions you'd make in a normal case about what to put on and what to defend and all that sort of stuff? That's right, Your Honor, because there's choices to be made, and one of the issues here is the concept of fighting jello, and so the changes that happen with their position of when did this oral agreement take place? Did it take place right when the... Well, in fairness, in fairness, Counselor, you could say that to both sides. With the inconsistent positions for fighting jello? Well, to me, they're pretty much the same thing. You look at what transpired in the Delaware proceedings and it's almost the polar opposite of what the parties say in this proceeding. Well, there's two aspects of that, Your Honor. One is the fighting jello aspect, and one is the inconsistent positions because what we have tried to do throughout the District Court proceedings is trying to, and it just goes back to that basic trial ad law school concept of you got a bunch of facts, how do you deal and tell something that makes sense with all the different facts? And that's what we've tried to do. We haven't tried to, in the District Court proceedings, weave and bob back and forth. They have a claim for multiple concepts, and those concepts, there's little tweaks to it on their claim is did the oral promise take place right before the note was signed, right when the note was signed, right after the note was signed, and what is the effect of that on various defenses that we have, like the statute of limitations, statute of laws? Well, in view of our time constraints, why don't we start with what I would think would be the most directly answerable of the claims for liability here. Why isn't the note valid on its face, at least as to the maker associates? Well, one of the problems with the note, and I understand it, it's a great question. There's a written note. Really? For a great answer? Well, I'll give you one. And you don't even need me to answer the question. You just have to look at what the plaintiff said. So after the note was signed, immediately after an email was sent by Mr. Gamble, long after the note was signed, Mr. K himself, who is now deceased, described the transactions as never a loan. So he decided it was never a loan. He writes in the email that the concept that this was a loan is totally untrue, misleading. Money has never been a loan. You know that as well as everyone. Now, everyone doesn't include his financial advisor apparently, and everyone doesn't include all the lawyers that were involved in the case too, but Mr. K said that it's totally untrue. And the very concept, Mr. Klein, who is the personal representative to the estate, he was worried that Mr. Gamble himself, during the Delaware trial, was putting $2,000 into account as a subterfuge, ridiculed the concept that a note even existed, and he testified that the concept of a note, he was worried that it was not genuine, worried about planting evidence that didn't even exist. I mean, I read that testimony, but I mean, normally if you sign a note and it's in writing and you know, and I say I have a note, and I say it's in writing, and then later I say, look, I never intended to repay that. I mean, I'd get laughed at for that sort of position. I mean, just because someone said there's testimony after the fact, I just have a hard time how we get away from, at least on the note, what's in the print, on the document. Right. I understand the concern there, Your Honor, but again, we have to look at the standard that we're dealing with on a summary judgment motion, and when the facts are put in the most favorable light, which is the standard that this court is reviewing, the most favorable light, if you put it into the testimony, that the note was not genuine. That's the most favorable light. We have a disingenuous note that it is a subterfuge. That is totally untrue. The note is totally untrue. The note is misleading. What about your client's testimony at the Delaware proceeding? Is it your testimony that you agreed to be personally liable on a promissory note for at least part of the money that was going to Mr. Kaye? Yes. And the note shows up on the various accounts payable ledgers of associates and Mr. Campbell. I mean, what are you saying that this is enough to invoke the parole evidence rule for summary judgment purposes? Well, those statements happen long after the note. So were the ones that you just talked about from Mr. Kaye? I'm talking about the parole evidence rule specifically. The parole evidence rule is usually preventing prior statements from affecting the note. We're talking about statements long afterwards, but to get to the question of whether how do we deal with that evidence, that testimony at trial, remember, when that question was asked at trial, the note was not in front of Mr. Campbell. So he is testifying off of memory about how he signed that note, and the other side caught the error and they put Mr. Offit, which is Mr. Kaye's attorney, the deal attorney, the same law firm, the litigation lawyers put the deal attorney on to say, no, Mr. Campbell was wrong. He did not sign it in his individual capacity. He signed it under the entity, Eagle Force's capacity, and when you look at what they cite in their own case on the interest side... Well, if the testimony was that Mr. Campbell signed the associate's note in his capacity as an officer or authorized party on behalf of associates, how does that allow associates to walk away from the note that's before us? The other side's testimony was that he signed it in his corporate capacity, company capacity. Mr. Campbell's testimony was mistaken on how he signed it, and then the other side came up... Right, I understand that. All that may end up being a jury question or a bench-draw question, but my original question went to, why is associates not liable on this note? For a couple reasons, Your Honor. One, they denied the existence of that note. Two, when you look at the transactions that were, and again, this goes back and forth... So they deny it now. What about in the Delaware? Pardon me? I said they deny it now. What about during the Delaware litigation? During the Delaware litigation, well, it goes back to there was some inconsistent positions that, again, will have to be dealt with by the District Court, but both sides, as the Court pointed out, and I can't sugarcoat that there's evidence that goes against us here, and I understand that, and that's what I said during the summary judgment argument, that there is evidence that goes against us, and there's evidence that goes against us at the point of a trial. At trial, perhaps the District Court will find the note to be enforceable. Counsel, again, just hypothetically, I know you're asking that we vacate and remand on Counts 1, 2, and 3. What about Counts 4? I mean, even if there's some lack of certainty about an oral contract or an oral modification, wouldn't the statements by your client that are in the record at least create a question of fact of liability on the equitable claims? Well, procedurally, Your Honor, they did not go forward with Count 4 at trial. They were granted summary judgments on 1, 2, and 3, and they had a full trial scheduled and did not go forward on Count 4, so I don't think they can revive Count 4 at this point. So, has Count 4 been... I thought you wanted a trial. I thought... You don't... Make sure I'm understanding that. So, when you say there was a trial, I thought we were here on the review of summary judgment motions. We're here on the summary judgment motions, and they did a cross-appeal on the court's finding of interest, so there was a trial. They were granted summary judgments on Counts 1 through 3, and they elected not to go forward for Count 4 at that trial. So, what was the trial about? Was that just for interest? There was a trial on interest as well as the concept of attorney's fees and how there should be an attorney's fee... how the attorney's fees should be interpreted. There has not yet been a ruling... That's attorney's fees under the note? Under the note, yes, Your Honor. All right, so that was a bench trial to determine when the interest started to run and whether or not there were attorney's fees under the note. Correct, Your Honor. That's the only thing that went to trial. It's the only thing that went to trial, and then there was post-trial briefings on the reasonableness of attorney's fees, and those have been held in abeyance pending the court's review. But would you go forward on Count 4 in the middle of that trial? I don't understand. I thought the equitable relief and the contractual relief, that was sort of mutually exclusive, so having prevailed on contractual relief, why would you go... I don't understand your theory that Count 4 has somehow been waived. I want to give you a chance to explain it to me. Well, I think it's like any trial proceeding. If you go forward at trial... There was no trial on liability. It's a theory of liability, and there was no trial on liability. So in what trial were they supposed to go forward? There was a bench trial set, Your Honor, and everything was alive except for those things that were resolved. And what was resolved on summary judgment were Counts 1, 2, and 3, and Count 4 was not resolved, and our position would be that they should have put forward any evidence at trial of Count 4. Council, you've got some time on rebuttal, and there's a lot we need to take it up there. So now we'll hear from the opposing counsel, Mr. Walter. Good morning, Your Honor. Harold Walter here on behalf of Appelese & Cross Appellants. Let me just start off with Count 4. The court, in my recollection of the record, the record of course will speak for itself, granted Count 4 but said, we're not going to have a trial on Count 4 because of granted liability on Counts 1, 2, and 3, and you don't get it, you know, both in law and equity. So there's no judgment based on Count 4? I think the court granted judgment on Count 4. Is there an order that's in the record that you can point us to that covers Count 4? There is an order in the record. I don't have it at my fingertips, but the court entered an order deciding summary judgment in March of 2021, and that order contains what the court said about Count 4. And Your Honor, you know, let me start with where I think the court started, which is the belief that both sides have taken contradictory positions in the Delaware litigation versus the Virginia litigation. And with respect, I don't think that's true. I think that Appellants Council's done a great job of selling that idea, but it's not true. Mr. Kaye's position. I may answer my general overall question in this case, which is setting aside the liability of associates on the note. Why isn't everything else that we've got the back and forth on here maybe except for the interest? Why isn't that a jury question or a bench trial question? Because it seems like you've got plenty of evidence on both sides that would call summary judgment in the question. I think there's several answers. One is legal and one is factual. One is practical. The legal issue is, and we cite these cases to the court, this court's rulings, that trial courts have an affirmative obligation to prevent factually unsupported claims of defenses from proceeding to trial. What they did was they took pot shots at our evidence. They didn't come forward with any evidence on their own. The practical answer is that you have basically a bench trial. It's not going to be presented to a jury. You have cross motions for summary judgment, which means that both sides believe that there were no material facts in dispute.  one important distinguishing factor between a summary judgment proceeding and a trial would be you're not going to have any credibility determinations made at summary judgment. It would seem from the surface that credibility or the lack of credibility would be a significant factor to the district court judge in making its decision. I think, Your Honor, that what our trial court judge said was she was making judgments not based on credibility but based on... So she didn't do that and didn't feel it was necessary because there was overwhelming evidence establishing the fact that Mr. Campbell understood and treated this as a loan. He reported it as a loan to the federal government on his tax returns. But let's assume we think the evidence isn't so clear. I'm trying to figure out practically the question I asked your colleague and maybe this is your practical point that you just alluded to a second ago. If we think there are questions of fact about the guarantee issue and about the oral either modification or contract issue and maybe even the equitable issue and we were to make that decision, how does this practically work? Your colleague says you just go back for a trial and people have bench trials all the time just like they have jury trials all the time and people would have to make decisions about what evidence to put in and we would just go along on that basis. I mean, I know you want us to affirm but assuming hypothetically we don't, do you agree with what he said about how this would go forward? Not exactly, Your Honor, because the evidence that we would rely on is already in the record. Mr. K is not alive to testify about what he meant when he testified in Delaware. So you may have some practical limitations of what you can do and you may from your client's testimony rely on transcripts from prior proceedings and things like that, in which case your evidence might not be much different. Maybe the district court's rulings, I mean, I think from a practical standpoint would suggest perhaps the district court had that view of the record down. Maybe that would be the same, maybe it wouldn't, but wouldn't the defendants be entitled to get up on the witness stand and say, you know, if we thought there was a question of fact, I know this is what is in the record in Delaware, but here's what was going on there, or something like that. That's what trials often happen, right? Right, but I think that under the summary judgment standard where the evidence has to be considered in the light most favorable to the non-moving party, the court's already done that. The court has assumed that Mr. Campbell would deny it and says you can't deny that what Your Honor read, or I think Judge Agee read, the testimony where he's asked point blank is there a note? He says yes, there's a note. As I said, I think what they've done is the one piece of evidence that they have is Mr. Kaye's testimony where he says it's not intended as a loan, but the context of that is that in the Delaware litigation he was talking about his motive. Why did he put $2 million at risk in a business that had no customers and no prospect of ever being able to pay it back? It's because he expected to be a partner in the business and make it succeed. I appreciate that motive issue, but let me ask you this. I read statements that the District Court relied on, I think you put in, about Mr. Campbell's concessions of liability in certain ways. That's just my characterization of them. That may not be the best characterization. What I never saw are all the terms of any oral contract. If you have an oral contract, it's got to have all the terms that make for a valid agreement. Where would I go to get the details, not just I have an obligation, but the details of any oral contract or any oral modification? I don't want your words, I want JA sites if you can do that. Yes, Your Honor. At JA 289, Mr. Campbell was asked a request to admit that he never entered into an agreement to borrow money from Richard K. He denied that, meaning he did enter into an agreement to borrow money from Mr. K. You're talking about the request to admit answer. Yes, and then the accompanying interrogatory asked him if he denied it, explained it, and he explains it. He says that the promissory note that he says defendant states that he entered into an agreement to borrow money from Richard K. and or his affiliates. The defendant further states that the promissory note was drafted by K's attorneys, blah, blah, blah, executed with the anticipation that any additional monetary contributions from K would be subject to the same terms and conditions as the original note, as the original loan. So what you have is exactly what you were looking for. So money that was loaned after the due date of a written agreement was due at the same time as the written agreement, which was before it was even loaned. That doesn't make sense, right? Well, it does, Your Honor. For instance, in a credit card situation where you sign up with Visa and you say, you sign a note that says, I'm going to pay you back whatever amounts of money you agree to advance to me. So two years after you sign the note, you go to the store and you charge something. Well, when's that money due? According to the terms of the note, it's due in 30 days. And if you don't pay it in 30 days or if you're running a balance, it's due. The note doesn't say, maybe it does, correct me. You know the record a lot better than me. But my memory is the record said, you know, the note is due and payable on a specific date, not 30 days from when it's extended. Yes, Your Honor. But what the note says is that interest accrues on the running balance of the note. Running balance is not the right word, but it's that concept. It's the principal amount. So the principal amount of the note... It says the principal amount shall be repaid exactly three months after the date, hereup. So does that mean, under your theory, that when an additional $100,000 was transferred by Mr. K after the note, that within three months of that transfer date, it was due? No. It was... It's due immediately. It's due immediately. And what that means is that you have a running balance. So for instance, if the loan... I understand that's what you say now, but it doesn't look like that's what the note says. That was part of the dilemma on the interest question. Well, Your Honor, I think that the note does say that although the money is due, in the same way that your credit card, if you're running a balance, the money is due immediately. You don't pay it. The interest starts running immediately, as soon as the day you buy the item at the store. And so I think that the oral amendment is very clear that all the same terms and conditions apply. The only thing that was changed was the amount would now increase. And that's exactly what happened. So you have... I think you have... What's the evidence that your client agreed to an amendment? The fact that he continued to loan money past the $700,000. What's the... Okay. So the fact that money was contributed is your... Your position is the fact that money continued to be provided by Mr. K indicates he agreed to certain repayment terms, like it's all under that same note? Absolutely. But did he ever say that? Is there anything in the record where Mr. K says yeah, my understanding was these additional monies are going to be treated as a loan and repaid in accordance with the note terms? The complaint in this lawsuit says that. I got that. Normally complaints aren't evidence. But I know that maybe... I hear your point there. Unfortunately, Mr. K died days after we filed the lawsuit so there's no testimony on that. But the fact is as the district court said this was either a gift and it was not treated by anybody as a gift or it was a loan or it was a capital contribution. We know it's not a capital contribution because Mr. Campbell opposed it as a capital contribution. Another option is that there's liability under equitable theories. Well, there's always that as a backup, Your Honor. But I think that you have a note that is clear and definite in all of its terms. There's no ambiguity about when interest is due, how much interest is due, what the principal amount is. The court found the principal amount and found the principal amount limited to the precise dollar, to the penny that Mr. Campbell admitted to. We had a claim beyond that. The court said not going there. And the court even denied us a trial on that issue saying you're not going to get a trial in federal court over $31,000. So, I think the court here took the evidence, waited, gave them the benefit of the doubt, and said there is no way I could ever decide this any differently. Therefore, a trial on those issues is not necessary, granted summary judgment, and I think that the court did the right thing in those terms. We never got to talk really about the cross appeal, the interest issue. I think the court there was trying to do something fair, but in doing that, rewrote the contract in a way that's contrary to Virginia law and the law pretty much everywhere. The law, the interest provisions are very clear that interest began running on default. Default is a defined term. The interest should have started upon default. Instead, the court, contrary to what they say, the court did not find it to be a demand note. Instead, what the court found was that by their actions, the parties somehow changed the term. They amended the note, and as we go through in the brief and analyze it, there just isn't anything there to support that position. Thank you, Counselor. You both sides have reserved some rebuttal time, so now we'll go back to Mr. Kinzel. Yes, Your Honor. Thank you. There is just no evidence at all about what these terms were going to be that were going to be agreed upon about when the interest might accrue on any advancements that happen after the October alleged due date. There's nothing in the record that supports when any oral agreement took place and what was said, what terms were done, and when the interest would do. That was October 2014. Yes. And they describe in the brief, it's clear and unequivocal that it would be the interest would run on those other advancements from the day of the advancements. Clear and unequivocal in their brief means not. There is no evidence about that whatsoever. That is Mr. Walter in the briefs and the lawyers afterwards saying the interest should begin to run from the date that the advancement was made, but the note itself talks about three months from the date due, which is in earlier in that year on the 7th. And so there is nothing about those terms and how they should apply. But again, parts of the brief, they say, well, the agreement happened right before the note was signed, when the note was signed, within days after the note was signed, and as each advancement was made, because it depends on the legal defense that's at play when they have to morph when this agreement took place. There's simply no terms. There's no, as the district court said, do you have a piece of paper in the back of a napkin? Anything that shows this, they had years and years and years worth from 2014, but they wanted to do a run through Delaware for the equity transaction. When they talk about interest, I mean, it's staggering some of the things that are said in the brief, because they describe it as completely out of the blue, that the district court did this completely out of the blue, and the out of the blue stems directly from their amended complaint. And I almost could not believe it when I read it yesterday, but paragraph 19 of their amended complaint, the parties agreed to orally modify the note's due date to make the entire balance of the note due upon written demand by plaintiffs. The parties modified paragraph 22, the parties modified the terms of the note orally and by their course of conduct to include all additional funds loaned in excess of the face amount of the note, and by waiving and extending the original due date, all additional funds loans would be payable in full upon demand. Paragraph 24, the note's repayment date, which remained payable upon demand. Defendants reconfirmed that the note as modified was payable upon demand by plaintiffs. That's paragraph 26 of the amended complaint. Fast forward all the years later, or a year later or so, a year and a half or so, at trial, the district court said, wait, I have a trial here on the interest. How do I explain everything that took place, again, consistently with all of the that interest shows from five days after demand was made in 2020? Because they laid in wait during the Delaware litigation to make sure litigation went all the way through on their claim of equity and then only afterwards did they file in the federal court and they deemed it as, and again, it's their scope, it's their allegation about what Mr. Kaye's state of mind was with a team of lawyers, with the financial advisors, what was the terms of this note, and they said they orally and by course of conduct by course of conduct made it a demand upon demand note. And the district court's ruling is exactly what they said it was, but they don't like that now because they already locked in the principal amount, so at trial they had a different position. To deem it completely out of the blue is it's incredible. And also the court's ruling is very consistent with what took place at trial. Again, they have a quote that the law doesn't favor technicalities, that it favors trial on the merits. Their quote and their brief, but it's on the interest. There was a trial on the merits. That's what the law favors. They don't use that quote in the summary judgment part of it because that's not a trial on the merits. That is weighing credibility is what did occur here because if you can't get to the result that the district court did without weighing credibility because if the note and the concept of a loan is deemed fully untrue, the very existence of a loan is fully untrue, rightmost favorable to the non-moving party, then there is no note, there's no loan, there's no liability. At trial, there was the statements made in the complaint and the amended complaint. No objection to that coming in by the plaintiffs and the appellees. There was a demand letter itself. There was a note that has upon demand in it. There is the impossibility, as the court pointed out, of how interest would be applied retroactively for future advancements. To deem this like a credit card is woefully different than what a note is for a fixed sum. No payments ever were recognized by the appellees. They talk about the tax returns and the payable reports. They say, well, sloppy record keeping shouldn't go against us, but those sloppy records are what they use as admissions. And so, it hasn't come up in our argument, but in the case where they had the payable reports, it's because of their claim for equity. And Mr. Walter and his law firm reviewed those payable reports. Well, those payable reports are not ticking up based upon interest. They are fairly constant. There's some deviations of 2,000 for the mathematical error, but they don't tick up in interest. There's no objection. Hey, where's the interest? Why isn't interest accumulating? So, that's another piece of evidence here. No demand for the money ever occurred during the Delaware litigation, and there's never any kind of objection or statement for them to ask for it. So, the court, I know my time is about up, but when we go to the bottom line, as the court mentioned in the prior argument, there really was a credibility determination, and the summary judgment ruling is inconsistent with Rule 56, and the interest at trial on the merit should be sustained. Thank you. Thank you, Mr. Kinzel. Mr. Walter. Your Honor, the language in the note couldn't be clearer. Under interest rate, it says, commencing on the date of default of this promissory note and thereafter until all sums due and owing here under shall have been paid in full, interest shall accrue on the unpaid principal amount at a rate of 6% per annum. So, you have a very clear statement in the note that you have a 90-day interest-free period after which interest begins to run. What's your position, counsel, that your claim says something different? You came into court and said, we agreed to change that. That's one thing that I asked you about the terms earlier, where I find specific terms. You said, well, the complaint counts. Here's a complaint where you allege there's been a modification of when the interest is due. We're supposed to just use the complaint when it helps you but not when it hurts you? No, Your Honor. We use the complaint when those claims made in the complaint are pursued and relied upon by the court. In this case, what happened was that claim was unproven and abandoned. Nobody relied on it. The district court went through and said, I'm not going to hold you to that because it's not a judicial admission. Nobody relied on it. In the brief, we go through in greater detail that I'm going to have time to do today what you need to show. What courts in this to hold someone to an unproven allegation in a complaint. I guess one of the things that I just heard counsel say is that Mr. Kaye laid in wait as if somehow this is getting interest on his $2 million for the six plus years that Mr. Campbell kept it is somehow unfair. The parties agreed that the interest rate would be 6% per annum. Mr. Campbell kept the $2 million the entire time. He could have paid it back at any time. He could have put it into if his argument is you wouldn't have accepted it. If that were true, he could have paid it into the court. The fact is he kept the money and he used it. The parties agreed that the value of keeping that money was 6% per annum. It's not appropriate for a court to go back and say, well, six years is a long time to run interest. It is a long time, but it's also a long time for him to keep the money, which he did voluntarily. When we talk about what's fair, which as we all know is not always what the law does, but it is a consideration. It's certainly not unfair and it was the expectation of the parties that for so long, he was going to pay 6%. There is nothing, absolutely nothing in the record to indicate that Mr. Kaye ever said, well, I'm going to go to Delaware and pursue the equity deal, the transaction documents. While I'm doing that, you can keep the money interest-free. The only discussion of interest-free was the first 90 days. I think in terms of interest, the court was trying to split the baby and fashion something that it invented. The other thing is to keep in mind that Mr. Campbell has not, Mr. Campbell stands up and says, I didn't know anything, I don't owe the money at all, and I don't owe any interest. His latching on at this point to the court's analysis is inconsistent with his position. I think if we look at Mr. Kinzel mentioned the fact that the demand note also includes, I'm sorry, that the promissory note also includes the word demand. As we went through with the district court and in our brief, that is simply an editing mistake on the part of both counsel. Mr. Campbell objected to this being a demand note and insisted that it be a time note. Mr. K agreed with that and instructed both clients, instructed the lawyers to remove all of the demand language. The lawyers did that as best they could, but they missed one word in the introductory paragraph. Mr. Campbell reviewed the note believing that it was now a time note. He also missed the one word. Now he wants to latch onto that one word to create ambiguity. I don't think it creates ambiguity because, as this court knows, when you have a specific provision that deals with something, it takes precedence over a general provision. You have the specific provision that I just read, which provides when interest began to run and it's based on time, not on demand. Even taking into account the court's position, the district court's position that in order for courts of conduct to modify the contract, the party asserting it has to prove mutual assent in either the passage of valuable consideration, estoppel in pay or waiver. We go through in our brief in great detail all of those things. Clearly, none of those have been established. There's no mutual intent. Mr. Campbell still stands up and he certainly didn't agree to a suspension of interest. There was no valuable consideration, no estoppel, and certainly no waiver. Waiver is an intentional relinquishment of a known right. Mr. Kay never relinquished interest. He was asked no question about it. He gave no answer about it. Your Honor, I think from the standpoint of summary, the court's ruling was out of the blue and was inappropriate and should be reversed. In terms of going back to the main issue, I don't think there would be any purpose served in having a bench trial on the remaining issues that were decided by the court. I think the court, as I said before, gave Mr. Campbell the benefit of the doubt, assumed that he would testify that he didn't mean it, although again, there's good case law that says you can't create an issue in summary judgment by filing an affidavit that contradicts your prior testimony or statements without explaining how those statements were wrong or misleading. He's had that opportunity. He's never come forward and explained why they're wrong. Essentially, you have a party who says, I got $2 million and I should never have to repay them. I think that's where this case lies. Thank you very much, Mr. Walter. For the first time in some time, we're now going to be able to come down and greet counsel to our appreciation for your arguments. I know this has been a long controversy for the parties and they have a lot invested in it financially and emotionally, but it's not too late to reach a settlement in this case. One party or the other may come to find in the future they'll regret it if they didn't take that opportunity. With that, we'll come down and greet counsel.
judges: G. Steven Agee, Pamela A. Harris, A. Marvin Quattlebaum Jr.